**IN THE UNITED STATES DISTRICT COURT**
**IN THE NORTHEN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Z.A., a minor, by Carla Carlini,
her mother and next friend,

      Plaintiff,                                        Civil Action
                                                  No._____

vs.

THE CITY OF ATLANTA, a
Municipal Corporation of the State
Of Georgia, d/b/a Atlanta Police
Department and ANTHONY L.
ANDERSON, individually and in
his Official Capacity.

      Defendants,
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiff, Z.A., a minor, by and through Carla Carlini, her mother and next friend,

pursuant to the Federal Rules of Civil Procedure, sues Defendants CITY OF ATLANTA ("City")

and ANTHONY L. ANDERSON ("Anderson") (hereinafter sometimes collectively referred as

"Defendants") and avers the following:

## INTRODUCTION

1. This is a civil action seeking damages against both Defendants for committing acts depriving
   Plaintiff of rights secured by the United States Constitution and Georgia state law.

2. The federal claims alleged hereinafter are: **Count I** - §1983 claim against the City; **Count II** -
   §1983 claim against Anderson in his official capacity as a police officer the Atlanta Police
   Department ("APD"); **Count III**- a state tort claim against Anderson for sexual battery; **Count
   IV** – a state tort claim against Anderson for intentional infliction of emotional distress; **Count
   V** - a state tort claim against Anderson for negligent infliction of emotional distress; **Count VI**

1

- a state tort claim against the City for respondent superior liability; **Count VII** – a state RICO claim against the City and Anthony Anderson; and **Count VIII** – a federal RICO claim against the City and Anthony Anderson.

### JURISDICTION, VENUE AND COMPLIANCE WITH STATUTORY PRE-SUIT NOTICE

3.  Pursuant to 28 U.S.C. §§1331 and 1343, et seq., this Honorable Court has federal question jurisdiction over Plaintiff's federal civil rights claims under 42 U.S.C. §1983 and 42 U.S.C. §1961-1968, (Counts I and II). The claims are brought under the 4th, 8th, and 14th Amendments of the United States Constitution.

4.  Pursuant to 28 U.S.C. §1367, this Court also has supplemental jurisdiction over the Plaintiff's state law and common law claims because they are directly related to Plaintiff's §1983 claims (Counts III and VIII).

5.  Pursuant to 28 U.S.C. §1391(b), venue properly lies before this Court because the cause of action upon which the complaint is based arose in Fulton County, Georgia, which is situated within the vicinage of the United States District Court for the Northern District of Georgia.

6.  The Atlanta Police Department (APD) and City of Atlanta City were given timely notice of this claim under O.C.G.A. §50-21-26 by (EXHIBIT *A*) on December 13, 2023, and July 2, 2024. Throughout the Complaint, APD and the City are used interchangeably.

### THE PARTIES

7.  Plaintiff, Z.A., 17, is a minor who at all times relevant has been a resident of Gwinnett County, Georgia.

8.  At all times relevant to this Complaint, Anderson was a duly sworn and licensed police officer (formerly) employed by APD and acting under color of law as an officer within the course and scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs,

training, and usage by the City and its Police Department. Under Count II (§1983), Anderson is being sued in his individual capacity for violating clearly established law.

9. The City is an incorporated municipality within the State of Georgia and lies within the Southern District of Georgia.

10. At all times relevant to this Complaint, the City had a police department—APD—which was responsible for the policies, practices, and customs of APD and the police officers it employs.

11. At all times relevant hereto, the APD employed and controlled its police commissioners, majors, captains, lieutenants, sergeants, ranking officers, detectives, staff and others sworn and unsworn personnel.

## FACTS

### (i)    The Events of August 2, 2023

12. In the early hours of August 2, 2023, Plaintiff Z.A. was involved in a single motor vehicle accident on Interstate 20 East near exit 52 in Fulton County, Georgia.

13. Current investigation suggests that Anderson was not working patrol at the time; nevertheless, he was working an off-duty job within his jurisdiction and was thus "on duty."

14. On his way back to the station at the end of his shift, Anderson saw Plaintiff Z.A. on the side of the highway injured with her disabled vehicle.

15. Plaintiff Z.A., 16 years old and alone in the middle of the City, had completely totaled her car. The front airbags had deployed, and she suffered significant—and visible—injuries, including abrasions to her face and injuries to her back and neck.

16. Standard police procedure would have prompted five immediate steps by Anderson: (1) notify dispatch and have a zone patrol car respond to handle the matter; (2) call Fire Rescue; (3) contact Z.A.'s parents to notify them of her condition and where she would be transported to

be medically treated; (4) call a tow truck to recover Plaintiff's vehicle; and (5) write a supplemental police-accident report. Instead of following APD's standard law enforcement policies, protocols, and procedures, Anderson, aroused by the scene, took more sinister action.

17. Anderson made no notifications to his supervisors to seek support personnel.

18. In fact, prior to Anderson's arrival, a highway safety employee also found Z.A. and called the police and an ambulance. As soon as Anderson arrived on the scene, he thwarted the Good Samaritan's intervention. Without medically clearing Plaintiff Z.A. himself, Anderson called off responding medical personnel enroute to render first responder aid. This gave Anderson a predatory opportunity.

19. Instead of using his badge in a reasonable manner, and in accordance with his duty and with law enforcement policy and procedure, Anderson leveraged his authority—and Z.A.'s trust in law enforcement—to coerce her compliance for what would follow.

20. Calculatedly, Anderson put injured Z.A. in his marked law enforcement vehicle without rendering her any aid and dropped her off at a gas station located at or around 1977 Martin Luther King, Jr. Drive, S.W. Atlanta, Georgia at approximately 3:30 a.m., *alone*.

21. There, he told Z.A., still dazed and injured from the crash, that she must wait for his return as he needed to "clock out" of his off-duty job/assignment. Without any means of transportation, and alone in unfamiliar territory, Z.A. waited, not knowing what to do.

22. Anderson dropped off his squad car at the police station, clocked out of duty, recovered his personal vehicle, and drove back to the gas station where he had left Plaintiff Z.A.

23. When Anderson arrived at the gas station, Plaintiff Z.A. was still there waiting, scared, vulnerable, and alone.

24. Then, under the pretense of offering to drive her home, Anderson took a detour, drove to a secluded section of roadway to avoid detection, and forced Plaintiff Z.A. to perform oral sex upon him.

25. Anderson then drove to Plaintiff Z.A.'s parents' house where he dropped her off at the curb without alerting her parents, or anyone, to the accident or to her injuries. Oddly enough, it was Z.A.'s first day of school.

26. That day, after a school-wide presentation on sexual assault against minors, Plaintiff Z.A. told the guidance counselor at her school what happened with Anderson mere hours earlier, which prompted a call to Z.A.'s parents and to the Gwinnett County Police Department.

27. The Gwinnett County Police Department contacted Nicole Glover, an APD employee in the Open Records Unit, who, at the time and by mere coincidence, was engaged to be married to none other than Anderson.

28. Current investigation and information reveal that Glover impeded inquiry into Anderson's conduct by refusing to provide information to the relevant authorities and/or denying that any such information was in their possession.

29. After a brief investigation by APD's Special Victims Unit, Anderson was arrested and charged with Violation of Oath of Office, Cruelty to Children (2nd degree), Aggravated Sexual Battery, and Aggravated Sodomy.

30. He pled guilty in January 2025 to Improper Sexual Contact by Employee or Agent First Degree, False Statements or Writings; Conceal Facts or Fraudulent Documents in Matters of Georgia, and Violation of Oath by Public Officer and is currently serving a six-year prison term with other sentencing penalties.

31. Additionally, after having his bond denied at his first appearance, Anderson was permitted to post a bond and walk the streets of Atlanta. Resultantly, Plaintiff Z.A. and her family have been concerned for their safety as they continue to pursue justice.

32. Anderson's profile shows that he has had a history of workplace misconduct and has abused his position of power and authority as a police officer with the APD with respect to his interactions with the public. But Anderson is only one APD sexual predator which the City/APD has allowed to prowl among its Rank and file.

      **(ii)    The City's and APD's History of Customs, Policies, and Practices resulting in Similar Constitutional Violations, Tolerated by the City/APD**

33. There is a historic pattern and ongoing policy within APD that facilitates this type of misconduct with impunity. The overwhelming rate at which APD officers engage in sexual misconduct while on the job is the result of negligent hiring, training, supervision and promotions, creating a laissez-faire attitude within the APD that assaulting, battering, falsely imprisoning, and raping civilians was—and still is—acceptable, reinforced, and encouraged.

34. APD did not act responsibly by, for example, implementing in-service training and/or policies and procedures to reduce or eliminate the opportunity for these sex crimes by officers on civilians.

35. APD's publicly available history of sexual predation speaks for itself.

36. In 2004, APD Officer Wayne Longe forced a woman to have sex with him in the back of his patrol car after arresting her. After receiving permission to rejoin the APD, he again sexually assaulted a woman whom he arrested for public intoxication four years later.

37. Longe remained suspended despite indictment and continued to work for the department, albeit administratively.[1]

38. In 2008, Officer Edward Rabb of the APD's "Red Dog Unit" was charged with raping his neighbor after holding her right arm behind her back, pushing her face down into the bed, and forcibly raping and sodomizing her. Prior to this incident, he initiated a relationship with a woman he met during a traffic stop and admitted to slamming her into a wall in front of her sister. In addition to this incident, Rabb had been cited for domestic assault, failure to respond to a call, failure to appear in court, and DUI. Current investigation suggests he is still an APD officer.[2]

39. Each of these acts was tolerated, encouraged, and even facilitated by the City. Despite multiple violent acts against women, Rabb is still an active-duty police officer with the APD.

40. This tolerance sends a message that all other APD officers can simply explore and exploit their sexual urges upon non-consenting citizens they encounter under the pretext of performing their official duty.

41. In 2008, APD Officer David Wilborn resigned from the APD after an allegation regarding on-duty sexual assault.

42. Even though Wilborn admitted to supervisors that he preyed on a woman at her place of employment and performed sexual acts, the investigation concluded as a result of his resignation.

---

[1] Bill Torpy, *Police suspensions add up in time, pay*, The Atl. J. Const. (Aug. 2, 2009), https://www.ajc.com/news/local/police-suspensions-add-time-pay/PPKf3UdnI82P0zPx5JM3VM/
[2] Daniel Silliman, *Atlanta officer to face grand jury , rape indictment*, Clayton News Daily (May 15, 2008), https://www.news-daily.com/news/atlanta-officer-to-face-grand-jury-rape-indictment/article_bd43751f-be38-5174-8f44-570d4bb59da0.html

43. Thereafter, Wilborn went on to rape another woman while working as an off-duty officer at a northwest Atlanta apartment complex and was ultimately indicted in 2019 for raping a woman during a traffic stop when he was working with the Lithonia Police Department.[3]

44. Despite this slew of heinous and sexually violent allegations, some to which he confessed, Wilborn was only reprimanded by the Georgia Peace Officer Standards and Training Council following a speeding citation in 2010.[4] Again, no new training nor policy change.

45. Beginning in 1997, APD Officer Byron Rainey collected several civilian complaints of physical violence and sexual assault.[5] Nevertheless, APD permitted his return to patrol duties.[6]

46. It was not until 2018, after he was found to have deputized his own brother to make an illegal arrest on behalf of a private security firm that Officer Rainey was relieved from active duty.

47. In 2021, APD Officer Howard Portis was charged with sexually assaulting and sodomizing a woman who had called 911 to report a burglary.

---

[3] He was also cited for a variety of other issues while working with APD between 2004 and 2007. Associated Press, *Fired Georgia officer to be prosecuted for rape*, Wash. Times (Oct. 16, 2019), https://www.washingtontimes.com/news/2019/oct/16/fired-georgia-officer-to-be-prosecuted-for-rape/

[4] Shaddi Abusaid, *Former Lithonia officer pleads guilty to raping woman while on duty*, The Atl. J. Const. (June 3, 2022), https://www.ajc.com/news/crime/former-lithonia-officer-pleads-guilty-to-raping-woman-while-on-duty/AGDV6I3NZNHCNGG6BJEKCGRPAM/

[5] In 1997, Byron Rainey received a written reprimand after video evidence revealed he beat a man during Freaknik. In 2007, then a supervisor, Rainey was captured on video sexually assaulting a woman in the freezer of a Kentucky Fried Chicken. Next, in September 2009—within 7 days—he detained and sexually assaulted two different women on two separate occasions. He was suspended for several days for these vile, repetitive acts. In 2012, a coworker reported Rainey for displaying sexually explicit images at work; there, he was suspended for four days. Despite a half-dozen complaints involving sexually violent behavior, APD's Office of Professional Standards and then-Atlanta Police Chief George Turner overturned recommendations to terminate Rainey. Nicole Carr, *APD sergeant accused of multiple sexual assaults remains on force*, WSB-TV Atl. (Nov. 13, 2018, at 5:32 p.m. ET), https://www.wsbtv.com/news/2-investigates/apd-sergeant-accused-of-multiple-sexual-assaults-remains-on-force/869726029/

[6] In 1997, Byron Rainey received a written reprimand after video evidence revealed he beat a man during Freaknik. In 2007, then a supervisor, Rainey was captured on video sexually assaulting a woman in the freezer of a Kentucky Fried Chicken. Next, in September 2009—within 7 days—he detained and sexually assaulted two different women on two separate occasions. He was suspended for several days for these vile, repetitive acts. In 2012, a coworker reported Rainey for displaying sexually explicit images at work; there, he was suspended for four days. Despite a half-dozen complaints involving sexually violent behavior, APD's Office of Professional Standards and then-Atlanta Police Chief George Turner overturned recommendations to terminate Rainey. *Id.*

48. According to the criminal complaint, once Officer Portis had entered the victim's home, he deactivated his body camera and physically forced the victim to perform sexual acts on him.

49. Thereafter, he offered to pay the woman $250.00. Following his arrest for this incident, it was revealed that Officer Portis had a history of deactivating his body worn camera before making sexual advances, for which a second indictment was filed.[7] He resigned before the internal investigation concluded.

50. In 2022, APD police supervisor Wellington Clarke was alleged to have engaged in a two-year campaign of sexual harassment and intimidation of a female employee of the City of Atlanta.

51. His supervisors continued to transfer him despite receiving subsequent and repeated complaints regarding Clarke's sexual harassment.

52. When the female employee complained, APD's Human Resources Department told her it would take years to investigate the internal complaint, and she ultimately resigned due to continued sexual harassment and widespread retaliation.[8]

53. The investigation against Clarke was ultimately closed without report of discipline.

54. In 2022, APD Officer Lionel Dely was found guilty of Rape and Violation of Oath by a Public Officer after an Acworth woman accused him of showing his badge during an in-home massage appointment, telling her that he was conducting an investigation, and ultimately sexually assaulting her.

55. During his criminal trial for these acts, the District Attorney's Office revealed that he had raped three other women across different counties.

---

[7] *Sentencing revealed for ex-Atlanta police officer in sexual assault case*, 11Alive (Nov. 20, 2023, at 7:13 p.m. ET), https://www.11alive.com/article/news/crime/ex-atlanta-officer-howard-portis-sentenced-sexual-assault-case/85-e90a37a6-67c4-418d-a785-da7b2db04273

[8] Wilborn P. Nobles III, *Atlanta Police inspector faces harassment lawsuit from ex-city employee*, The Atl. J. Const. (Feb. 10, 2022), https://www.ajc.com/news/atlanta-news/atlanta-police-inspector-faces-harassment-lawsuit-from-ex-city-employee/FXUNZGMUBVEKVFHZQ57DELCV3A/

56. On June 1, 2024, Benjamin Hopson stopped a 14-year-old walking alone on the sidewalk and asked the child to perform oral sex in exchange for compensation.

57. Although Hopson was working for the Richmond County Sheriff's Office at the time of his arrest for Enticing a Child with Indecent Purposes, he was relieved from duty by APD in May 2023 for unknown reasons.[9]

58. These are but a few recent examples, among many others, that illustrate APD's patterns and practices of identifying and ignoring sexual predators in its own ranks. In fact, it further fuels the appetite of other APD police officer predation. The knowledge of this tolerance for sexual abuse on civilians is well known within the APD.

59. These failures enabled and empowered Anderson to continue his pattern of misconduct that ultimately escalated into the brazen and vile sexual assault he perpetrated against Plaintiff Z.A., who was just 16 years old at the time.

60.  As alleged/ herein, sexual misconduct by APD officers is neither novel nor rare and is rather reflective of a history, pattern, practice, and de facto policy within the APD.

61. APD's recruitment, training, and/or supervision remain wholly inadequate. The network of negligence begins with APD's recruitment protocol.

**APD's Negligent Hiring**

62. The City has not established or followed nationwide standards in screening recruits for employment. These standards include quality background investigations and stringent adherence to polygraph and psychological examination results. Their negligence has oftentimes lead the APD to accept "borderline" results. Candidates not eligible have been hired; marginal candidates have been hired.

---

[9] *Here's what led to Augusta child-enticing arrest of fired Atlanta cop*, WRDW-TV (Aug. 24, 2024 at 1:17 pm. ET), https://www.wrdw.com/2024/08/27/heres-what-led-augusta-child-enticing-arrest-fired-atlanta-cop/

63. The field training of graduated recruits also fails to meet nationwide standards.

**APD's Negligent Supervision, Negligent Retention and Negligent Promotions**

64. For every publicly reported instance of APD officers who have engaged in sexual misconduct, there are numerous other instances that have been concealed from the public[10], investigated internally by the City and/or APD's IAU, and/or resolved confidentially. This pattern signifies, amplifies, and highlights the negligence and willful ignorance that pervades oversight and discipline of officers in the APD who have engaged in sexual misconduct over many years prior to this sexual assault committed by Anderson. This fact—alone—defeats any City/APD "Monell" defense.

65. Due to the near-constant accumulation of new internal affairs complaints, APD's IAU itself admits that it does not act until, and unless, the judicial system is involved.[11]

66. This is a major deviation from National standards which allow for independent – and often times parallel administrative and criminal investigations. Indeed, that strange "protocol" does not follow nationwide standards.

67. While police officers enjoy *"Garrity"* rights, that should not translate to "freezing" the administrative investigation. After all, that is the entire purpose of *Garrity*—it immunizes a subject officer's testimony in the administrative investigation from use in criminal proceeding.

68. There is no internal policy at the APD nor legal prohibition against concurrent investigations[12], yet, and for no apparent reason, IAU waits for the courts to do the IAU's job,[13] mindful that

---

[10] *See, e.g., 2 Atlanta cops accused of sexual assault*, Law.com (Feb. 18, 2009 at 12:00 a.m.), https://www.law.com/dailyreportonline/almID/1202551786433/
[11] Torpy, *supra* note 1.
[12] *See generally Garrity v. New Jersey*, 385 U.S. 493 (1967).
[13] Brad Burchfield was investigated by the FBI in 2008 after the murder of Kathryn Johnston whereupon he was suspended with pay for 23 months. He immediately resigned when Internal Affairs attempted to question him. *Id*.

the standard for a criminal conviction is far higher than that for a finding of an administrative violation

69. Consequently, an overwhelming portion of these IAU complaints are closed without interviewing the complainant or any available civilian witnesses until, or unless, criminal charges are filed.

70. There is no good reason for IAU to standby idly to "wait and see" if there is a criminal prosecution; the acts themselves constitute *prima facie* administrative violations.

71. By declining to initiate investigations upon learning of misconduct, APD has, de facto, facilitated a policy of permissible misconduct.

72. Rather than protect its citizens and do their due diligence, IAU asks the taxpayers to fund paid suspensions and lengthy discovery procedures, which are often stalled and hindered by APD's lackadaisical IAU.

73. Per the APD's Policy Manual ("Manual"), Chief Schierbaum is responsible for disciplinary processes and overseeing disciplinary actions. Differently, the Office of Professional Standards ("OPS") is tasked with receiving, investigating, and imposing consequences of complains. OPS then makes recommendations to the Chief of Police regarding procedures and training that can be included in disciplinary action.[14]

74. Per the APD's Policy Manual, the Chief of Police is responsible for disciplinary processes and overseeing disciplinary actions taken by supervisors. Differently, the Office of Professional Standards ("OPS") is tasked with receiving, investigating, and imposing consequences of

---

[14] Atlanta Police Department, *Policy Manual*: *APD.SOP.2020 Disciplinary Process* (May 19, 2022), https://public.powerdms.com/APD13/documents/487968

complaints. OPS then makes recommendations to the Chief of Police regarding procedures and training that can be included in disciplinary action.[15]

75. Chief Schierbaum, his predecessors, his subordinates, and the Office of Professional Standard have been nothing short of negligent in their investigations and discipline of APD officers accused of and proven to have used their badge to commit violent sexual crimes against civilians while on duty.

76. Once a complaint is received by the APD, the manual directs the designated disciplinary authority to *immediately* investigate the complaint by interviewing the complainant and any witnesses and gathering documents outlined in the APD's Complaint Investigation Checklist.

77. Furthermore, supervisors and investigators area *required* to maintain a log of complaints to "ensure that no investigation remains overdue without cause" and also to report the status of such investigations to supervisors every seven calendar days.[16]

78. Although, per the policy manual, investigations *shall be investigated and adjudicated within 180 days*, Major Lane Hagin, former commander of Atlanta's IAU, admitted that the APD sits on its hands for another overwhelmed arm of government, the State Attorney's Office, to do the IAU's job.[17]

79. Based on the above-referenced history of sexual assaults by APD officers before August 2023, and Anderson's own history of misconduct, the City needed to engage in and complete its IAU investigations and employ a scheme of progressive discipline that ensures those who abuse the badge, and particularly those who do so repeatedly, are: excluded from roles involving civilian

---

[15] *Id.*
[16] *Id.*
[17] Torpy, *supra* at note 1.

interaction, removed from their law enforcement positions entirely, and/or stripped of their law enforcement credentials.

80. Indeed, such a policy exists, yet APD's IAU and OPS fail to investigate and implement the procedure outlined in APD.SOP.2020[18] in any meaningful way. Instead, officers are permitted to violate law and policy alike with impunity.

81. Indeed, in the instant case, Atlanta Police Chief Darin Schierbaum gave the public, and Plaintiff Z.A., his word that these policies would be followed and that an investigation would be conducted "swiftly,"[19] yet it has been over 180 days without any communication with the complainant, Plaintiff Z.A., from the IAU in violation of APD.SOP.2020.[20]

82. Based on the above-referenced history of sexual assaults by APD officers before August 2023, the City needed to implement a more robust, rigorous screening process of its police force before employing, promoting, and/or deploying officers like Anderson into the field with a documented history of on-duty misconduct.

83. Defendant City of Atlanta has adopted and maintained for many years policies, customs and practices before August 2023, which were recognized and accepted within the APD, and created conditions which posed an extraordinarily unreasonable risk of constitutional injury, and in fact did cause Plaintiff to sustain constitutional harm through:

   a. A custom, policy and practice of ignoring, failing to report, and/or minimizing the gravity of officer misconduct including sexual assault, thereby acquiescing to an environment where sexual assault is collectively dismissed, facilitated, and/or ratified;

---

[18] Atlanta Police Department, *supra* at note 14.
[19] Atlanta Police Department, *Statement on Officer Anthony Anderson* (Oct. 5, 2023 at 9:25 p.m. ET), https://www.atlantapd.org/Home/Components/News/News/4817/71
[20] Atlanta Police Department, *supra* at note 14.

b.  A custom, policy and practice of failing to adequately, properly, and timely respond to victims or witnesses who report being sexually groomed, assaulted, or harassed by officers;

c.  A custom, policy, and practice of failing to adequately and thoroughly investigate civilian complaints, particularly those that related to sexual violence, until or unless the District Attorney's Office decides to take criminal action;

d.  A custom, policy, and practice of inadequate training regarding proper protocol when a patrol officer faces a single-vehicle accident and/or initiates an encounter with a minor and/or person of the opposite sex;

e.  A custom, policy, and practice of not referring civilian complaints of criminal conduct to the Fulton County District Attorney or Solicitor General as well as deterring victims from pursuing criminal charges independently; AND

f.  A custom, policy, and practice of not sustaining citizen complaints if the investigation relies on the word of the complainant against that of the law enforcement officer.

84. APD knew about and/or were deliberately indifferent to the consequences of establishing and maintaining the above-referenced policies, practices or customs which directly caused Plaintiff's constitutional harm.

85. APD knew about and/or were deliberately indifferent to the creation of dangerous conditions and environments that unreasonably placed victims and witnesses like Plaintiff Z.A. in positions of extreme vulnerability and increased risk of severe injury, ultimately causing Plaintiff to suffer tremendous physical, emotional, and constitutional injuries.

86. Defendants' recklessness and deliberate indifference toward individuals like Plaintiff—as expressed through the policies, customs, and patterns of practice noted above—bears a substantial causal nexus with the violation of Z.A.'s right to substantive due process under the 4th, 8th, and 14th Amendments of the Constitution of the United States, in violation of 42 U.S.C. §1983.

87. Resultantly, victims of APD's historical and ongoing campaign of sexual violence face a disturbing "Catch 22"—report the crime to the agency for whom the assailant works or risk reporting the crime directly to the District Attorney's Office, who will refer the case to law enforcement for investigation.

88. In both instances, victims are left without a safe and meaningful avenue to seek redress and officers can sleep easily knowing fully well that any alleged misconduct will be handled by the very people with whom they share a fraternal relationship and cone-of-silence-based protection.

89. Anderson's supervisors knew of and/or were deliberately indifferent towards Anderson's history of misconduct and deployed him in the field anyway, putting the citizens of Georgia—adults *and* children—at risk.

### APD's Negligent Training

90. The City has failed and/or refused to properly supervise police officers such as Anderson and/or engage in meaningful supervision, discipline, and accountability. By declining to remove Anderson and other officers after repeated and escalating violations, the City has cultivated a permissive attitude towards sexual violence in its ranks writ large. Through its action and inaction, the City and its agents, including the supervisors in the chain of command,

created an environment of impunity—and a de facto policy of tolerance—where Anderson's sexual assault of Plaintiff Z.A. was foreseeable, permissible, and acceptable.

91. By refusing to act despite the knowledge of the risk Anderson posed to the general public, the City and its agents impliedly and/or expressly authorized Anderson's misconduct.

92. Furthermore, most police departments follow a common-sense, but also nationwide, standard that when a male officer encounters a female while investigating or taking her into custody. The same applies when the genders are reversed.

93. A police officer of the same gender is called, and the arrestee is searched and only then is the person transported. Otherwise, two male officers handle the transport, minimizing the chance of a sexual assault on the civilian.[21] APD fails to follow that protocol.

### APD's Cover-Ups

94. There are additional instances APD has successfully buried from the public[22] under the façade of transparency when, in reality, APD's Internal Affairs Unit hardly conducts investigations properly, if at all.

95. What is more, the APD's Open Records Unit conspires with IAU and other accountability mechanisms within the APD to further hinder, prolong, and prevent victims of the APD from pursuing justice, as they have done in this case.

96. Despite the APD's diligent and desperate attempts to conceal the patterns outlined in this Complaint from the public and from this Court, it is clear from the aforementioned examples that there is more to uncover via discovery and that the violent assault against Plaintiff Z.A.

---

[21] Atlanta Police Department, *Policy Manual: APD.SOP.3080 General Procedures* (May 16, 2024), https://public.powerdms.com/APD13/documents/488610
[22] *See, e.g., 2 Atlanta cops accused of sexual assault, supra* at note 10.

occurred as a necessary consequence of—rather than in spite of—existing policies, patterns, and practices within the APD.

## PROXIMATE CAUSE AND DAMAGES

97. As a result of being sexually battered by Anderson, Plaintiff Z.A. has sustained severe trauma and mental anguish, and her entire life has been upended and permanently damaged.

98. As a result of Anderson's conduct, Plaintiff Z.A.'s life has fallen to pieces. She has received voluntary in-patient treatment at a mental health facility due to suicidal ideation. Despite her attempts to establish agency and seek accountability through legal redress, Plaintiff Z.A. remains in need of significant professional and psychological support and intervention as she prepares to graduate high school while processing deep fear and distrust of authority figures and public safety resources.

99. As a direct and proximate result of the recklessness, wanton and willful misconduct, and deliberate indifference of both Defendants, Plaintiff Z.A. suffered severe and permanent damages, including, inter alia, involuntary sexual relations and its signs, symptoms and sequalae; emotional distress in the form of anxiety, fear, fright, and depression; various and severe painful bodily injuries; past and future severe psychological and psychiatric injuries and conditions; past and future pain and suffering; past and future medical expenses; past and future embarrassment and humiliation; past and future loss of life's pleasures; past lost wages and loss of future earnings capacity; and/or all other damages as may be permitted under law.

100.    Z.A. is represented by counsel and they are entitled to be compensated for services in this matter and Z.A. seeks an attorney's fees award under 42 U.S.C. §1988.

<u>COUNT I</u>
**42 U.S.C. §1983 – MUNICIPAL LIABILITY (MONELL CLAIM)**
**NEGLIGENT HIRING, NEGLIGENT TRAINING, NGELIGENT SUPERVISION,**
**NEGLIGENT RETENTION, NEGLIGENT PROMOTION**
**Against City of Atlanta**

101.    Plaintiff realleges paragraphs 1 – 100 as if fully set forth herein and further states:

102.    At all relevant times, the City were acting under color of state law pursuant to 42 U.S.C. §1983 by overseeing police officers under their command, and/or managing and supervising the affairs, conduct, and activity of officers like Anderson who routinely interact with the public to ensure they were acting constitutionally.

103.    At all relevant times, City was bound by the 4th, 8th, and 14th Amendments to the United States Constitution.

104.    At all relevant times, Plaintiff Z.A. enjoyed a substantive due process right to bodily integrity, free from unreasonable intrusions and sexual attacks by officers of the APD such as Anderson.

105.    Defendant City has adopted and maintained for many years policies, customs and practices before August 2023, which were recognized and accepted within the APD, and created conditions that posed an extraordinarily unreasonable risk of constitutional injury, and indeed did cause Plaintiff Z.A. to sustain constitutional harm through a custom, policy and practice of failing to properly train, supervise, investigate and discipline officers to prevent on-duty sexual assaults from occurring.

106.    As described above, the misconduct and abuse of power by Anderson—manifest in his vicious sexual assault of Plaintiff who he isolated, violated, and abandoned on the curb—is so outrageous that it shocks the conscience.

107.    APD and its agents demonstrate deliberate indifference to a risk of harm so unreasonable and outrageous that it shocks the conscience.

108.    Plaintiff Z.A. was a foreseeable victim because Anderson, and many APD officers, demonstrate a proclivity to engage in progressive abuses of power such that upon encountering a minor female who was alone, injured, and afraid, he would disregard his public safety duties, cloaked in deliberate attempts to circumvent liability, and execute his predatory, pedophilic plans without fear of consequences.

109.    Anderson's confidence in his carefully crafted scheme is a direct consequence of the institutional disregard, tolerance, and implicit encouragement provided to him by his superiors, the Office of Professional Standards, Chief Schierbaum, and the APD as a whole.

110.    The reckless supervision and deliberate failure of APD, the Office of Professional Standards, and Chief Schierbaum represented a continuation of the widespread and pervasive culture of self-preservation in the APD whereby the City turned a blind eye toward and deliberately failed to adequately punish and discipline APD officers, detectives, or staff who sexually assaulted and/or harassed citizens under the guise of performing police work and providing protection.

111.    In violation of the 4th, 8th, and 14th Amendments and in violation of the City and/or APD's own policies, procedures, and regulations, Anderson sexually assaulted Plaintiff Z.A.

112.    In violation of the 4th, 8th, and 14th Amendments APD's own policies, procedures, and regulations, created the danger or risk of harm to Plaintiff Z.A.—and others—by failing to investigate, supervise, and discipline Anderson, thereby facilitating an ever-inflating record of misconduct against civilians, including the despicable acts described herein.

113.    APD, the City and agents, while acting under color of state law, unlawfully and/or unreasonably, willfully, recklessly, maliciously and/or with deliberate indifference, deprived Plaintiff of her right to bodily autonomy and to be free from sexual assault by an APD police officer.

114.    The City also needed to implement a more robust, rigorous, and different program for training and supervising its ranking officers and supervisors to encourage accountability within the APD and deter and prevent supervisory officers from ignoring warning signs of abuses of power including sexual abuse of witnesses, informants, arrestees, and/or members of the public who call for help from law enforcement.

115.    Defendant City's failure to properly hire and supervise officers of the APD like Anderson amounted to a deliberate indifference to the rights of individuals who came into contact with him.

116.    Furthermore, in the instant case, and in those mentioned in paragraphs 36 through 57 of this Complaint, Anderson declined to use his body worn camera, as mandated by APD.SOP.3133—even while working approved overtime and extra job duties.[23] This policy not only holds individual officers accountable for engaging their body-worn camera, but also designates the Chief of Police and unit commanders with the responsibility to ensure that subordinate officers are employing them consistently and properly.[24]

117.    APD's Office of Professional Standards continues to treat the failure to use body-worn camera during civilian interactions as a slap-on-the-wrist, technical violation when, in fact, APD's history, pattern, and practice demonstrates a more calculated, dangerous intention

---

[23] Atlanta Police Department *Policy Manual*: *APD.SOP.3133 Body Worn Cameras* (Mar. 24, 2021) https://public.powerdms.com/APD13/documents/735631
[24] *Id*.

requiring heightened supervision and training that APD has failed time and time again to provide.

118.    The Defendant City's training program of its officers is so lacking—and the patterns suggesting necessity of a more rigorous program so pervasive—that the City was deliberately indifferent to the likelihood—and demonstrable pattern—that prior incidents of sexual misconduct by Anderson and/or his contemporaries, colleagues, co-workers, and other officers in the APD, were not only likely but *inevitable* under its current culture. The inadequacy of this training and discipline at APD accordingly amounts to City policy.

119.    Based on the history of sexual assault and gender-based violence by APD officers and the consistent, recurring violations of APD's Policy Manual, the likelihood that sexual misconduct by Anderson would repeat itself was so apparent and predictable that the failure to train Anderson and his colleagues on the appropriate protocol when encountering a single-car accident[25] involving a minor and/or someone of the opposite sex[26], as well as the consequences of committing sexual assault while driving a marked police car in uniform, constitutes an actionable violation of Z.A.'s constitutional rights under the standards flowing from substantive due process and Z.A.'s right to bodily integrity pursuant to the 4th, 8th, and 14th Amendments of the U.S. Constitution.

120.    Defendants' recklessness and deliberate indifference toward individuals like Plaintiff—as expressed through the failures to train described herein—bears a substantial causal nexus with

---

[25] Atlanta Police Department, *Standard Operating Procedure: APD.SOP.3060 Reports and Report Writing* (Oct. 10, 2024) https://public.powerdms.com/APD13/documents/488600; Atlanta Police Department, *Policy Manual: APD.SOP.3063 Accounting for Field Reports* (Apr. 21, 2022), https://public.powerdms.com/APD13/documents/488604
[26] Atlanta Police Department, *Policy Manual: APD.SOP.4010 Traffic* (Dec. 5, 2010), https://ia800205.us.archive.org/32/items/AtlantaPoliceDepartmentPolicyManualHTML/Chapter4/APDSOP4010Traffic.htm

the violation of Plaintiff's right to substantive due process under the 4th, 8th, and 14th Amendments of the Constitution of the United States, in violation of 42 U.S.C. §1983.

121.    The acts and omissions of the APD and Anderson were the direct and proximate cause of Plaintiff's physical injuries and resultant emotional harms.

122.    Z.A. is represented by counsel and they are entitled to be compensated for services in this matter and Z.A. seeks an attorney's fees award under 42 U.S.C. §1988.

    **WHEREFORE**, Plaintiff demands judgment against the Defendant City, plus compensatory damages, interest, costs and attorney's fees under 42 U.S.C. §1988.

## <u>COUNT II</u>
## 42 U.S.C. §1983 CLAIM
### Against Anthony Lamar Anderson

123.    Plaintiff Z.A. repeats and realleges each and every allegation in paragraphs 1-100 as if fully set forth herein.

124.    Anderson was enabled by the City's widespread culture authorizing and/or acquiescing sexual misconduct leading to the sexual assault of Plaintiff Z.A.

125.    Z.A. is represented by counsel and they are entitled to be compensated for services in this matter and Z.A. seeks an attorney's fees award under 42 U.S.C. §1988.

126.    A special relationship arises when law enforcement provides an express promise or assurance of assistance, the victim justifiably relies on the promise, and the victim suffers harm because of their reliance. This relationship creates a constitutional requirement that local government entities provide basic protective services to individuals with whom the special relationship is created.

127.    Upon arriving at the scene of a single-car accident with injuries, Anderson convinced Plaintiff Z.A. to get in his vehicle under the pretext of assistance. He failed to tell her that he

had, in fact, called off emergency medical services to see his sinister plan through. The fact that Plaintiff Z.A. was in need of medical attention, combined with his finding her on the side of the road in the middle of the night with a disabled vehicle, created a special relationship between Anderson and Plaintiff Z.A., giving rise to a duty of the Atlanta PD to protect Z.A. and render aid to her, or, at the very least, to not disrupt emergency medical services already in place.

128.    By and through his actions, Anderson assumed control over the situation and over Plaintiff Z.A. thereby placing her within a foreseeable zone of risk.

129.    Plaintiff Z.A., seeing a law enforcement officer in a marked police car, justifiably relied on Anderson's representations and apparent offer of assistance.

130.    As a result of her justified reliance on Anderson's authority, Plaintiff Z.A. was deceived into trusting him to get her home safely and was ultimately harmed.

131.    Anderson deliberately positioned himself as a trusted public official thereby leading Plaintiff Z.A. to believe he would protect her wellbeing.

132.    The harms, injuries, losses, and damages suffered by Plaintiff Z.A. were directly and proximately caused by the negligent and reckless conduct of the Anderson on August 2, 2023.

133.    Anderson's acts and omissions were deliberately indifferent to Plaintiff Z.A.'s serious medical needs, thereby depriving her of due process under the 4th, 8th, and 14th Amendments of the Constitution of the United States, the laws of the United States, in violation of 42 U.S.C. §1983.

134.    Plaintiff Z.A.'s injuries on her face as well as the severe damage to her vehicle were obvious to Anderson. Z.A.'s injuries required medical treatment.

135.    However, despite that medical intervention was on its way, Anderson called off the medical staff without Plaintiff Z.A.'s consent in violation of APD policy.

136.    Anderson's acts and omissions were deliberately indifferent to Plaintiff Z.A.'s serious medical needs, thereby depriving her of due process under the 4th, 8th and 14th Amendments of the Constitution of the United States, the laws of the United States, in violation of 42 U.S.C. §1983 and committed a violation of clearly established law.

137.    Georgia sexual battery laws have been incorporated into the criminal statutes for decades.

138.    Anderson was trained on the laws during his police academy training and was tested on that knowledge. To graduate from the academy and get sworn in, Anderson must have passed his "criminal law block" of the curriculum.

    **WHEREFORE**, Plaintiff demands judgment against Anderson and seeks compensatory and punitive damages, interest, costs and attorney's fees under §1988.

### COUNT III
### STATE TORT-SEXUAL BATTERY
### Against Anthony Lamar Anderson

139.    Plaintiff Z.A. repeats and realleges each and every allegation in paragraphs 1-100 as if fully set forth herein.

140.    As described herein, in the early morning hours of August 2, 2023, Anderson leveraged his badge to gain Plaintiff Z.A.'s trust, isolate her, and sexually assault and sodomize her in the backseat of his personal vehicle just ten miles away from her home in Gwinnett County.

141.    By sexually assaulting Plaintiff Z.A. in the confines of his personal vehicle, Anderson intended to cause a harmful, offensive, and/or substantial contact with her body and person, and desired the consequences flowing therefrom.

142.    Plaintiff Z.A. never consented to Anderson's unwanted, offensive, and/or harmful contacts of a physical and sexual nature upon her body and person.

143.    The harms, injuries, losses, and damages suffered by Plaintiff Z.A. were directly and proximately caused by Anderson on August 2, 2023.

144.    Because of the wanton and outrageous conduct of Anderson, which shocks the conscious as set forth in this Complaint, Plaintiff is entitled to punitive damages against him.

WHEREFORE, Plaintiff demands judgement against Anderson and seek compensatory and punitive damages, interest and costs against Defendant Anderson.

### COUNT IV
### STATE TORT- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Against Officer Anthony Lamar Anderson

145.    Plaintiff Z.A. repeats and realleges each and every allegation in paragraphs 1-100 as if fully set forth herein.

146.    Anderson, by and through his coercive conduct, physical isolation, failure to render aid, and sexual assault against Plaintiff Z.A. as described above, intentionally committed multiple acts of extreme and outrageous conduct directed toward her. From the moment he identified her as an opportune victim standing on the side of I-20 to leaving her on the curb in the early morning hours before her first day of school, Anderson made choices every step of the way demonstrating that he had a premeditated and intricate plan.

147.    On the date of incident, Plaintiff Z.A. suffered physical injuries to her person as a result of the unwanted, non-consensual sexual assault she suffered in the backseat of Anderson's vehicle.

148.    Today, Plaintiff Z.A. is still coping with the physical manifestations and psychological consequences of Anderson's attack and assault, including, but not limited to: nightmares, chest

pain, disruptions to sleep, anxiety and panic attacks, paranoia, anxiety, depression, and mistrust of authority figures such as law enforcement.

149.    Anderson's conduct goes beyond all bounds of decency and is utterly intolerable in any civilized community where people should be able to confidently place their trust in public safety and law enforcement entities.

150.    Anderson, by and through his outrageous and harmful coercive conduct, physical isolation, failure to render aid, and sexual assault against Plaintiff Z.A. as described above, caused severe emotional, psychological, and psychiatric injuries, distress and harm to her.

**WHEREFORE**, Plaintiff demands judgment against Anderson and seeks compensatory and punitive damages, interest and costs.

**COUNT V**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**Against Anthony Lamar Anderson**

151.    Plaintiff Z.A. repeats and realleges each and every allegation in paragraphs 1-100 as if fully set forth herein.

152.    As plead in this Complaint, the City of Atlanta's failure to properly hire, train, and supervise subordinates despite their knowledge, pattern, or practice of misconduct and constitutional violations constitutes negligence, particularly in light of their unofficial policy of rape, resign, repeat in addition to their multiple deviations and violations from APD's Policy Manual.

153.    Defendants' negligence contributes to a culture and environment in the APD that facilitates and encourages officers like Anderson, who have documented histories of misconduct, to escalate their behavior with a rubber stamp from their supervisors.

154.    The facts alleged in this Complaint detail a disturbing, brazen, and bare-faced course of conduct so severe that no reasonable person, let alone a *minor*, could be expected to endure it.

155.    But-for the City of Atlanta, Anderson would have engaged in a proper process of preparing an accident report upon finding a totaled vehicle and a minor child, alone, in the middle of the night. Instead, as a result of Defendants' negligent pattern of behavior, where officers should have seen a professional obligation, Anderson saw opportunity.

156.    Plaintiff Z.A. has since suffered severe emotional distress, as evidenced by her need to seek inpatient mental health support. She experiences physical symptoms of emotional distress including but not limited to: heart palpitations, shortness of breath, vertigo, abdominal pain, headaches, digestive issues, and difficulty sleeping.

**WHEREFORE**, Plaintiff demands judgment against Anderson and seeks compensatory and punitive damages interest and costs.

<u>**COUNT VI**</u>
**RESPONDEAT SUPERIOR-NEGLIGENCE**
**Against Defendant City of Atlanta**

157.    Plaintiff Z.A. repeats and realleges each and every allegation in paragraphs 1-100 as if fully set forth herein.

158.    At all times material, APD and its agents supervised Anderson and other officers engaged in misconduct.

159.    APD's failure to appropriately and properly take corrective action within supervisory positions emboldened and empowered Anthony Anderson to violate Plaintiff Z.A.'s constitutional rights under the color of state law and, from his perspective, under a cloak of impunity. This official conduct, over time, blossomed into a custom or policy of ignoring

flagrant constitutional violations time and time again, resulting in a deliberate indifference to the constitutional rights of local residents and citizens.

160.    The culture and history created, nurtured, and facilitated by Chief Schierbaum and APD superiors, as outlined in paragraphs 33-96 of this Complaint and in violation of the APD Manual put these Defendants on notice of the need to correct a negligent and ineffective framework for hire, supervision, and discipline. Chief Schierbaum and APD's agents failed to take any action despite this knowledge.

161.    The facts alleged in paragraphs 33-96 of this Complaint support an inference that the City of Atlanta and its agents knew that subordinates acted unlawfully and failed to stop them from doing so. In fact, the reasonable inference from these facts suggest that subordinate officers hold a valid, verifiable belief that even their most brutal and disturbing patterns of behavior will go unpunished so long as external mechanisms of accountability—namely the civil and criminal justice systems as well as the media—are avoided.[27]

162.    As alleged in this Complaint, Anderson's conduct was not an isolated incident, but rather a thread in a larger fabric of the City of Atlanta's consent to, and applause of, abuse of the badge.

**WHEREFORE**, Plaintiff demands judgment against Defendant City and seeks compensatory damages against Defendant City, plus interest and costs.

**COUNT VII**
**O.C.G.A. §16-14-4 VIOLATION OF GEORGIA'S RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO)**
**Against Defendants City of Atlanta and Anthony Lamar Anderson**

163.    Plaintiff Z.A. repeats and realleges each and every allegation in paragraphs 1-100 as if fully set forth herein.

---

[27] *See e.g. 2 Atlanta cops accused of sexual assault*, *supra* at note 10.

164.    Since its inception, the Atlanta Police Department and the Officer of Professional Standards has operated as the City of Atlanta's primary law enforcement enterprise.

165.    At all times relevant, Defendant Anderson, Chief Schierbaum, and APD supervisors were employed by the Atlanta Police Department. Although they are not sued in their individual or official capacities hereunder, their conduct is relevant to and evidence of the below describe concerted conduct.

166.    Defendant Anderson, APD superiors and higher-ranking officers, Chief Schierbaum, and APD's Office of Professional Standards and Internal Affairs Unit both directly and indirectly participated in the enterprise by: covering up crimes; failing to properly hire, train, and supervise officers; and improperly and insufficiently disciplining undisputed misconduct.

167.    Additionally, supervisors conspired or endeavored to violate O.C.G.A. § 16-14-4 via their reckless implementation of their discipline scheme wherein one or more supervising officers learned of, investigated, and ignored multiple, repeated crimes and civil rights violations. Their implementation of lax—and at times, nonexistent—discipline constitutes an overt act in furtherance of the conspiracy.

168.    These repeated violations of Atlanta residents' civil rights and personal dignity is the necessary outcome of a culture of impunity supported and facilitated at every level—from patrol officers like Anthony Anderson and Howard Portis to APD superiors and the APD's Open Records Unit.

169.    To date, Plaintiff Z.A.'s counsel has submitted several open records requests pursuant to O.C.G.A. § 50-18-71. Per the Atlanta Police Department's own website, Open Records Request should be fulfilled, if available, within three days. It has been over eight months since Plaintiff served her Open Records Request to the Atlanta Police Department with no responsive

communication from the department's personnel in violation of APD's Policy Manual Section SOP.1061.[28]

170.    The Atlanta Police Department has a well-documented history of engaging in racketeering activity as defined in O.C.G.A. § 16-14-3, which includes, but is not limited to: assault and battery, kidnapping, false imprisonment, burglary, tampering with evidence, extortion, and obstruction of justice.

171.    As alleged in paragraphs 27-28 and 94-96, the Atlanta Police Department, Chief Schierbaum, APD superiors, and Defendant Anderson have engaged in at least two acts of racketeering activity, so interrelated that it raises a reasonable inference that an agreement exists within the department and its various organs to permit officer misconduct and criminal activity under color of state law.

172.    But-for the APD's history of encouraging its officers to continue engaging in criminal activity, and a perverse, disturbing pattern of sexual violence, Plaintiff Z.A. would not have been injured. Had the APD disallowed this repeated misconduct or treated Anderson with a proper disciplinary scheme, he would likely not have been a patrol officer or a member of the APD at all.

**WHEREFORE**, Plaintiff demands judgment against Defendants City and Anderson and seeks treble, compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of Two Hundred and Fifty Thousand Dollars ($250,000.00), plus interest, costs of investigation and litigation, attorney's fees and delay damages pursuant to O.C.G.A. § 16-14-6.

---

[28] *See* Atlanta Police Department, *Policy Manual: APD.SOP.1061 Open Records Unit* (Dec. 30, 2020), https://public.powerdms.com/APD13/documents/487929

<u>**COUNT VIII**</u>
**42 U.S.C. §1961-1968—RICO**
**Against Defendants City of Atlanta and Anthony Lamar Anderson**

173.     Plaintiff Z.A. repeats and realleges each and every allegation in paragraphs 1-100 as if fully

set forth herein.

174.     Since its inception, the Atlanta Police Department has operated as the City of Atlanta's law

enforcement entity.

175.     As stated in paragraphs 33-96, it is clear that the APD has engaged in a pattern of behavior

sufficient to constitute racketeering activity under 18 U.S.C. § 1961, including, but not limited

to: kidnapping, sexual exploitation of children, extortion, and obstruction of justice.

176.     These repeated violations of Atlanta residents' civil rights and personal dignity is the

necessary outcome of a culture of impunity supported and facilitated at every level—from

patrol officers like Anthony Anderson and Howard Portis to the Chief of Police and to the

department's Open Records Unit.[29]

177.     In many cases, the Atlanta Police Department allows criminal activity to go unpunished

until and unless the community at large is made aware of multiple and repeated violations via

public criminal prosecution, as was the case for Rainey, Portis, Clarke, and, now, Anderson.

178.     In each of these cases, discovery procedures uncovered the dark reality of supervisory

neglect, failure to train and discipline, and blatant disregard for a *documented* criminal

campaign. Rather than employ a progressive discipline scheme ultimately resulting in

termination, APD superiors permitted officers with years of disciplinary history and proven

---

[29] To date, Plaintiff Z.A.'s counsel has submitted several open records requests pursuant to O.C.G.A. § 50-18-71. Per the Atlanta Police Department's own website, Open Records Request should be fulfilled, if available, within three days. It has been over six months since Plaintiff served her Open Records Request to the Atlanta Police Department with no responsive communication from the department's personnel. *See* Atlanta Police Department, *Open Records Unit*, https://www.atlantapd.org/services/open-records-unit (last visited Apr. 28, 2025).

violations of Georgia Department of Public Safety procedures to respond to civilian complaints without supervision nor concern for their vile, shocking conduct.

179.    Moreover, the APD has failed time and time again to meaningfully investigate misconduct, unless forced by the court of public opinion. The complete and total disregard for accountability or a basic search for truth continues to facilitate constitutional violations of the right to bodily integrity.

180.    Defendant Anderson's case is no different. His disciplinary history exemplifies the department's modus operandi of turning a blind eye to multiple, escalating civilian complaints until forced to reckon with the consequences of their inaction.

181.    Defendant Anderson came across Plaintiff Z.A. on August 2, 2023, with a cloak of impunity, knowing from his past interactions with supervisors and the department's history, that so long as there was minimal evidence—and no headline story—all would be forgiven. What Anderson—and the department—miscalculated was that his minor victim, although vulnerable in that moment, would not ultimately be silenced.

182.    But-for the APD's history of encouraging its officers to continue engaging in criminal activity, and a particularly disturbing pattern of conduct that involved sexual assault, Plaintiff Z.A. would not have been injured. Had the APD disallowed this repeated misconduct or treated Anderson with a proper disciplinary scheme, he would likely not have been a patrol officer or a member of the Atlanta Police Department at all. Moreover, had APD engaged in the proper training to prepare civilian officers for encounters with minors and civilians of the opposite sex, instances like this and those detailed in this Complaint would have been avoided.

**WHEREFORE**, Plaintiff demands treble and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of Two

Hundred and Fifty Thousand Dollars ($250,000.00), plus interest, costs, attorney's fees and delay damages as recoverable under 42 U.S.C. §1964.

## JURY TRIAL DEMAND

Plaintiff Z.A. demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was e-filed this _____ day of April, 2025.

*/s/ Richard J. Diaz*
**RICHARD J. DIAZ, ESQ.**
Florida Bar No.: 0767697
Email: rick@rjdpa.com
Secondary email: service@rjdpa.com

*/s/ Carlos R. Salazar, Jr.*
**CARLOS R. SALAZAR, JR., ESQ.**
Florida Bar No.: 1027807
Email: carloss@rjdpa.com
Secondary email: eservicelist@gmail.com

*/s/ Nicole M. Diaz*
**NICOLE M. DIAZ, ESQ.**
Florida Bar No.: 1040714
Email: nicoled@rjdpa.com

RICHARD J. DIAZ, P.A.
3127 Ponce de Leon Blvd.
Coral Gables, FL  33134
Tel.: 305-444-7181
Fax: 305-402-7879

*/s/ Arturo V. Hernandez*
**ARTURO V. HERNANDEZ, ESQ.**
Florida Bar No.: 324078
Email: avhlawpa@gmail.com

*/s/ Ramon A. Hernandez*
**RAMON A. HERNANDEZ, ESQ.**

Florida Bar No.: 101515
Email: rayhernandezesq@gmail.com

LAW OFFICES OF ARTURO V.
HERNANDEZ, P.A.
2655 South Le Jeune Road, Ste 500
Coral Gables, FL 33134
Tel.: 305-579-4850

*/s/ Glenn E. Cooper*
**GLENN E. COOPER, ESQ.**
GA Bar No.: 185555
Email: zach@coopershair.com

COOPER, SHAIR & ASSOC, P.C.
5855 Jimmy Carter Blvd #155
Norcross, GA 30071

***Attorneys for Plaintiff***