IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Z.A.,
*a minor, by her mother and next friend,*
Carla Carlini,

     Plaintiff,

       v.

THE CITY OF ATLANTA, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:25-CV-2537-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendant City of Atlanta's Motion to Dismiss [Doc. 20]. For the following reasons, the Motion is GRANTED.

## I.  Background

Early in the morning on August 2, 2023, the Plaintiff Z.A. was involved in a single car accident on Interstate 20 in Fulton County, Georgia. (Compl. ¶ 12). Defendant Anthony Anderson, an Atlanta Police Department ("APD") officer, was working an off-duty job within his jurisdiction at the time. (*Id.* ¶¶ 8, 13). While driving back to the station at the end of his shift, Anderson saw Z.A. on the side of the road in her disabled vehicle. (*Id.* ¶ 14). Z.A.'s car was totaled, and she suffered visible injuries, including abrasions to her face and injuries to her back and neck. (*Id.* ¶ 15). Anderson did not seek support

personnel to assist Z.A. and called off medical first responders that had been sent by a passing highway safety employee without first medically clearing Z.A. (*Id.* ¶¶ 17-18). He then put Z.A. in his marked law enforcement vehicle and dropped her off at a nearby gas station, alone, even though it was around 3:30 in the morning. (*Id.* ¶ 20). Anderson told Z.A. that he needed to "clock out" of his off-duty job and then would return for her. (*Id.* ¶ 21). He dropped off his law enforcement vehicle at the police station, clocked out, and drove back to the gas station in his personal vehicle. (*Id.* ¶ 22). Anderson picked Z.A. up from the gas station under the pretense of driving her home but instead took a detour, drove to a secluded section of roadway, and forced Z.A. to perform oral sex on him. (*Id.* ¶ 24). He then took Z.A. to her parents' house and dropped her off at the curb without contacting her parents or telling anyone about the accident. (*Id.* ¶ 25).

The next day, Z.A. told a guidance counselor at her school about the assault, who reported it to the Gwinnett County Police Department ("GCPD") and Z.A.'s parents. (*Id.* ¶ 26). The GCPD contacted Nicole Glover, an APD employee in the Open Records Unit who—unbeknownst to GCPD—was engaged to Anderson at the time. (*Id.* ¶ 27). As a result, Glover impeded inquiry into Anderson's conduct. (*Id.* ¶ 28). However, Anderson was ultimately arrested and charged for his actions, and in January 2025, he pled guilty to several counts. (*Id.* ¶ 30). He is currently serving a six-year prison sentence.

(*Id.*).

Z.A. filed this action on May 8, 2025 against Anderson and the City of Atlanta asserting several claims against the City, as relevant: municipal liability under 42 U.S.C. § 1983 (Count I); respondeat superior for negligence (Count VI); state law RICO under O.C.G.A. § 16-14-4 (Count VII); and federal RICO under 42 U.S.C. § 1961-1968 (Count VIII). The Plaintiff seeks a combination of compensatory, treble, and punitive damages on these counts, plus attorney's fees. The City has moved to dismiss all of the claims against it, [Doc. 20], and that Motion is presently before the Court.

## II.  Legal Standard[1]

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in

---

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III. Discussion

### A. *Monell* Liability (Count I)

In its Motion to Dismiss, the City argues that the Plaintiff has failed to state a *Monell* claim because she has not provided any detail of the alleged policy she says constituted deliberate indifference to Z.A.'s constitutional rights and, in any event, isolated events do not create a policy or custom. (City's Mot. to Dismiss, at 9, 11-13). It contends that mere negligent actions are insufficient to support a *Monell* claim and that, regardless, the allegations fail to establish deliberate indifference, since the Plaintiff alleges only that the City could have done something different with regard to its hiring, training, and supervision policies. (*Id.*).

4

The Plaintiff responds that the Complaint sufficiently alleges the City's consistent pattern of routine tolerance and under-investigation of sexual misconduct by APD officers. (Pl.'s Resp. in Opp. to Mot. to Dismiss, at 3-4). She asserts that she identified eight officers over the span of twenty years who engaged in egregious sexual misconduct and either remained on the job or were inadequately investigated. (*Id.* at 4-9). The Plaintiff asserts that the City's failure to properly investigate or impose discipline for these offenses constitutes deliberate indifference to the rights of the citizens victimized by the officers' misconduct. (*Id.* at 5, 9-11). And, she contends, the City's failure was the moving force behind Z.A.'s injury because it allowed Anderson access to her as a potential victim. (*Id.* at 11).

Under *Monell*, a local government body is liable under § 1983 when the execution of its policy or custom constitutes the "moving force" that inflicts injury upon an individual in violation of her constitutional rights. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). To state a claim for § 1983 liability against a municipality or other local government entity, a plaintiff must allege plausible facts showing (1) that her constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to her constitutional rights, and (3) that the custom or policy caused his constitutional violation. *McDowell v. Brown*, 392 F.3d 1283,

5

1289 (11th Cir. 2004). A plaintiff "has two methods by which to establish a [city's] policy: identify either (1) an officially promulgated [city] policy or (2) an unofficial custom or practice of the [city] shown through the repeated acts of a final policymaker for the [city]." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citations omitted).

The Supreme Court has also held that, in "limited circumstances," a § 1983 claim can arise from a municipality's failure to train or supervise its police officers. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). These limited circumstances occur:

> [O]nly where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*Id.* at 388-89 (citations omitted). The "deliberate indifference" standard sets a high bar to § 1983 liability. It requires a plaintiff to present evidence that the municipality knew of a need to train or supervise in a particular area but made a deliberate choice not to take corrective action. *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). The need for training is obvious when there is a pattern of constitutional violations by municipal employees or when the failure to train is likely to result in a constitutional violation. *See id.* at 1351-52; *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397-98 (11th Cir. 1994). "A showing of simple or even heightened negligence will not suffice" to

6

demonstrate deliberate indifference. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 406-07 (1997). However, if an existing training program does not prevent constitutional violations, "municipal decisionmakers may eventually be put on notice that a new program is called for." *Id.* "Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability." *Id.* (citation modified).

As an initial matter, the City's position that the City is immune from liability for its employment decisions under state law is irrelevant to the Plaintiff's *Monell* claim, which is brought under federal law. To that end, the case relied on by the City in support involved state law claims for negligent hiring and supervision. *City of Atlanta v. Durham*, 324 Ga. App. 563, 563 (2013). The Court will address the applicability of sovereign immunity to the Plaintiff's state law claims below. First, however, the Court turns to the Plaintiff's *Monell* claim, which can be fairly divided into three subparts: (1) the City's failure to supervise, investigate, and discipline APD officers for sexual offenses; (2) failure to train with regard to responding to a single-car accident involving a member of the opposite sex; and (3) failure to train with regard to activating body worn cameras ("BWC") during interactions with the public.

The Court also notes that, at times, the parties' arguments confuse a

custom or policy theory of *Monell* liability with a failure to train theory. The Court will attempt to clear up this distinction in its analysis. The City's arguments assume, as does the Court, that Anderson violated Z.A.'s constitutional rights under the facts alleged in the Complaint. Thus, the merits of the Plaintiff's *Monell* claim hinge on whether the City's failure to train constituted deliberate indifference to those constitutional rights, and if so, whether that failure caused her constitutional violations. *McDowell*, 392 F.3d at 1289; *City of Canton*, 489 U.S. at 388-89.

### 1. APD's Failure to Appropriately Supervise and Discipline its Officers

In her Complaint, the Plaintiff contends that the City "created conditions that posed an extraordinarily unreasonable risk of constitutional injury," and caused Z.A.'s constitutional injury, "through a custom, policy and practice of failing to properly train, supervise, investigate and discipline officers to prevent on-duty sexual assaults from occurring." (Compl. ¶ 105). She further asserts that "Anderson's confidence in his carefully crafted scheme is a direct consequence of the institutional disregard, tolerance, and implicit encouragement provided to him by his superiors, the Office of Professional Standards, Chief Schierbaum, and the APD as a whole." (*Id.* ¶ 109). Thus, the gist of this portion of the Plaintiff's claim is that APD failed to properly supervise, investigate, and discipline its officers for sexual offenses which amounted to tolerance of those offenses, leading to a culture where officers like

8

Anderson felt emboldened to act without fear of consequences. She asserts that this tolerance and turning a blind-eye amounts to deliberate indifference. (*Id.* ¶ 107).

The Plaintiff identifies eight police officers who committed sexual offenses either during or after their tenure at APD over the span of twenty-seven years. (*Id.* ¶¶ 36-57). Of these officers, one was no longer working for APD at the time the sexual offense was committed, Officer Hopson, and two voluntarily resigned after APD commenced an internal investigation, Officers Portis and Wilborn. (*Id.* ¶¶ 42, 49 56-57). Of the remaining five officers, the Plaintiff does not provide any facts regarding APD's investigation, discipline, or continued employment, if any, of Officer Dely, and instead states only that he was criminally prosecuted for his acts. (*Id.* ¶¶ 54-55). That leaves Officer Longe, in 2004, Officer Rabb, in 2008, Officer Rainey, in 1997, and Officer Clarke, in 2022. (*Id.* ¶¶ 36-39, 45-46, 50-54). And with regard to Anderson himself, the Plaintiff makes several conclusory references to past "misconduct" but never identifies the nature of it or APD's response (or lack thereof). (*See id.* ¶¶ 31, 59, 79, 82, 89).

Although the Court expresses serious concern over the actions of these officers and sympathy to their victims, the actions of four individual officers over twenty-seven years does not suffice to demonstrate a "pattern of constitutional violations" by City employees that would have put the City on

obvious notice of a need to change its training or supervision policies to prevent further violations, like the one Z.A. suffered.[2] *See Gold*, 151 F.3d at 1350. To be sure, it appears from the allegations the Plaintiff makes about those four officers that APD could have exercised better judgment with regard to its decision to retain the officers even after their offenses came to light. But merely pointing to something the City "could have done" fails to meet the high standard for pleading deliberate indifference. *City of Canton*, 489 U.S. at 391-92 ("In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident."). And, as the Plaintiff alleges it, the City was arguably negligent in failing to impose stricter discipline for the four officers the Plaintiff identifies. The Plaintiff herself alleges that it was. (*See* Compl. ¶¶ 64, 75, 90).

---

[2] The Plaintiff relies heavily on *Doe v. City of Philadelphia*, 2023 U.S. Dist. Lexis 142127 (E.D. Pa. Aug. 15, 2023), which is an unpublished decision from an out-of-circuit district. Here, the Plaintiff asserts her claim under a failure to train theory of *Monell* liability. (*See, e.g.*, Compl. ¶ 105 (stating that the City, "through a custom, policy, and practice of failing to properly train, supervise, investigate, and discipline officers . . . ."); (Pl.'s Resp. in Opp'n to Mot. to Dismiss, at 4 ("Here, Plaintiff similarly alleges and pleads in great detail that the City of Atlanta had notice of repeated sexual misconduct by APD officers and nonetheless failed to revise its policies, enforce discipline, or remove problem officers.")). The court in *Doe* denied the City of Philadelphia's motion to dismiss on the Plaintiff's failure to train claim by default because the City did not raise any argument as to that claim in its motion, not because of the merits of the Plaintiff's allegations. *See Doe*, 2023 U.S. Lexis 142127, at *46-47. The Plaintiff's reliance on this decision is therefore misplaced.

Nonetheless, "[a] showing of simple or even heightened negligence [does] not suffice." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.*, 520 U.S. at 407. Permitting the Plaintiff's claim to go forward here would condone "de facto respondeat superior liability" against the City based on Anderson's isolated bad acts in the instant case, which is a result *Monell* prohibits. *City of Canton*, 489 U.S. at 392. The lack of a pattern also indicates that "factors peculiar to the officers[s] involved in [these] particular incident[s]", including Anderson— namely, their proclivity to commit these types of offenses—were the "moving force" behind their commission of the sexual offenses rather than the City's alleged failure to train and supervise its officers. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.*, 520 U.S. at 407-08. To that end, the Plaintiff makes only a conclusory assertion that the City's failure to train "bears a substantial causal nexus with the violation of the Plaintiff's right[s]." (Compl. ¶ 120). This general allegation fails to satisfy the "rigorous standards of culpability and causation" that apply where, as here, the Plaintiff claims that the City did not directly inflict the injury but instead caused Anderson to do so. *See id.* at 405. Accordingly, the portion of the Plaintiff's *Monell* claim premised on the City's alleged failure to supervise, investigate, and discipline its officers fails.

### 2.  Failure to Train on Proper Response to Single-Car Accidents

Although the parties' briefs fail to touch on this portion of the Plaintiff's claim, the Court nonetheless addresses it out of an abundance of caution. In her Complaint, the Plaintiff alleges that based on the prior sexual offenses by APD officers she identified and recurring violations of APD's policy manual, the likelihood that Anderson would commit a sexual offense against a civilian "was so apparent and predictable that the failure to train Anderson and his colleagues on the appropriate protocol when encountering a single-car accident involving a minor and/or someone of the opposite sex" constitutes deliberate indifference sufficient to subject the City to liability under *Monell*. (Compl. ¶¶ 119-120). She also concludes that this failure to train "bears a substantial causal nexus" to the violation of the Plaintiff's rights. (*Id.* ¶ 120).

In order for this failure to train to satisfy the high deliberate indifference standard, the Plaintiff needed to allege that the City knew of a need to train with regard to the particular area at issue—in this case, proper response to a single-car accident—and deliberately chose not to correct its training. *Gold*, 151 F.3d at 1350. There are no such allegations here. While the Plaintiff does allege that Anderson violated APD's policy on this issue under the facts of this case, she does not allege a pattern of sexual offenses by APD officers arising out of improper responses to single-car accidents. *Id.* (explaining that the need for training is obvious when there is a pattern of constitutional violations by municipal employees or when the failure to train is likely to result in a

constitutional violation). None of the other sexual offenses identified by the Plaintiff involving APD officers arose out of a response to a single-car accident. (*See* Compl. ¶¶ 36-57). Instead, as the Plaintiff has alleged it, Anderson's actions in this case amount to an isolated violation of APD's policy that could not have put the City on notice of a need to correct its training with regard to single-car accident response. *Bd. of Cnty. Comm'rs of Bryan Cnty.*, Okla., 520 U.S. at 406-07. The Plaintiff has therefore failed to establish deliberate indifference. *City of Canton*, 489 U.S. at 387. Accordingly, this portion of her *Monell* claim fails.

### 3. Failure to Enforce Proper Activation of BWC Policy

The City's brief also fails to address this portion of the Plaintiff's claim, and the Plaintiff touches on it minimally in her response. (*See* Pl.'s Resp. in Opp'n to Mot. to Dismiss, at 9). In her Complaint, the Plaintiff alleges that Anderson declined to use his body worn camera in the instant case, which violated APD policy. (Compl. ¶ 116). She further alleges that the BWC policy at issue tasks the Chief of Police and unit commanders with enforcement but that policy violations are treated "as a slap-on-the-wrist, technical violation when, in fact, APD's history, pattern and practice" demonstrates dangerous intent when BWCs are not activated. (*Id.* ¶ 117).

With regard to this policy, the Plaintiff identifies two violators of the

BWC policy—Anderson, in the instant case, and Officer Portis. Officer Portis deactivated his BWC upon entering a victim's home after she called to report a burglary, and thereafter sexually assaulted her, but further investigation revealed he had previously deactivated his BWC to make sexual advances on civilians. (*Id.* ¶¶ 47-49). The problem with the Plaintiff's claim is that, even assuming these allegations establish the City's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct," she has not established the necessary causal link between the alleged failure to enforce the BWC policy and the sexual assault she suffered. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.*, 520 U.S. at 406-07; *McDowell*, 392 F.3d at 1289. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.*, 520 U.S. at 405. The crux of the Plaintiff's claim is that enforcement of the BWC policy was so lax that Anderson felt empowered to deactivate his BWC in the instant case, without fear of reprisal. But under the facts of this case, the City's alleged failure to enforce or train on the BWC policy cannot be said to be the "moving force" behind the sexual assault Z.A. suffered. *Monell,* 436 U.S. at 694. Rather, accepting the Plaintiff's allegations as true, the City's alleged failure was only

14

tangentially related to the constitutional violation Z.A. suffered because, as the Plaintiff alleges, it facilitated his actions. *Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 285 F.3d 962, 967 (11th Cir. 2002); (*See, e.g.*, Compl. ¶¶ 33, 112). But facilitation does not equate to direct causation. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.*, 520 U.S. at 404 ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."). Nor is it sufficient for the Plaintiff to allege that stricter enforcement of the BWC policy could have helped deter Anderson from sexually assaulting her. *City of Canton, Ohio*, 489 U.S. at 390 ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."). Thus, because the Plaintiff has not alleged facts showing a direct causal link between the City's alleged failure to enforce the BWC policy and the sexual assault she endured in the instant case, this portion of her *Monell* claim fails. *McDowell*, 392 F.3d at 1289.

For all of these reasons, the Plaintiff fails to state a *Monell* claim, Count I will be dismissed against the City.

## B.  Respondeat Superior Liability (Count VI)

15

As to this Count, the City argues that the Georgia Constitution provides it with sovereign immunity for its legislative or governmental acts, which shields it from liability from the Plaintiff's allegations that it failed to take corrective action as a supervisor. (City's Mot. to Dismiss, at 14-15). The City contends that it is entitled to immunity because the creation of APD's policies and procedures is "undoubtedly a governmental and/or legislative function." (*Id.*).

The Plaintiff curiously responds that sovereign immunity does not shield the City from liability under § 1983, although she acknowledges that her respondeat superior claim is a separate one brought under state law. (*See* Pl.'s Resp. in Opp'n to Mot. to Dismiss, at 12). She asserts that her claim is properly pled because she alleged that Anderson acted intentionally and criminally in assaulting Z.A. and that he used the authority of his badge to isolate and victimize her, while City supervisory officials failed in their hiring, training, and disciplinary practices, which "directly caused Plaintiff [Z.A.'s] sexual assault." (*Id.* at 12-13).

Under Georgia law, the doctrine of respondeat superior may subject an employer to liability for the negligence of its employee if the employee commits a tort (1) while acting within the scope of his employment and (2) in furtherance's of the employer's business. *Cotton v. Prodigies Child Care Mgmt.*, LLC, 372 Ga. App. 91, 93 (2024). Additionally, under O.C.G.A.

§ 36-33-1, municipalities are generally immune from liability for the negligent performance or non-performance of their governmental functions. The Georgia Court of Appeals has interpreted "governmental functions" to include "[a]ctivities that are undertaken primarily for public benefit rather than for revenue production." *City of Atlanta v. Durham*, 324 Ga. App. 563, 564-65 (2013). That Court has also held that "employment decisions, including the retention, hiring and supervision of employees, necessarily require consideration of numerous factors and the exercise of deliberation and judgment," which are discretionary functions beyond the grasp of judicial review. *Id.* at 565-66. And under O.C.G.A. § 36-33-3, municipalities are not liable "for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law."

As an initial matter, the Plaintiff's response appears to muddle her respondeat superior claim under state law with her *Monell* claim under § 1983. (*See* Pl.'s Resp. in Opp'n to Mot. to Dismiss, at 12). It is well established that a municipality cannot be liable for the torts of its employees under § 1983 on a respondeat superior theory. *Monell*, 436 U.S. at 691. Whether state sovereign immunity applies to the Plaintiff's state law respondeat superior claim is a different issue, however. Plaintiff's claim is two-fold; one part fails to properly allege the elements of a respondeat superior claim, and the other is barred by sovereign immunity.

17

In the first part of her claim, the Plaintiff alleges that the City's failure "empowered" Anderson to violate Z.A.'s constitutional rights under the color of state law. (Compl. ¶ 159). To the extent the Plaintiff attempts to predicate respondeat superior liability on Anderson's tortious conduct, she fails to state such a claim because she has not—and cannot— allege that Anderson committed such acts in furtherance of the City's business; in other words, in furtherance of his duties as a police officer for APD. *See Cotton*, 372 Ga. App. at 93. The Plaintiff essentially alleges the opposite, that Anderson used his position with APD to further his own tortious intent. But Georgia law is clear that respondeat superior liability may not lie where the employee "was not engaged in furtherance of the employer's business, but was on a private enterprise of the employee's own." *Id.* at 94-95. Even if Anderson somehow was acting within the scope of his employment duties when he kidnapped and sexually assaulted Z.A., the City would not be liable. *See* O.C.G.A. § 36-33-3.

The City is entitled to sovereign immunity for the second part of the Plaintiff's claim, in which she alleges that the City was "on notice of the need to correct a negligent and ineffective framework for hire, supervision, and discipline," but failed to take any corrective action. (Compl. ¶ 160). This claim falls squarely within the purview of the Georgia Court of Appeals's decision in *Durham*, where the court held that the retention, hiring, and supervision of employees are discretionary, governmental functions not subject to judicial

18

review. *See Durham*, 324 Ga. App. at 564-65 (citing O.C.G.A. § 36-33-1). The Plaintiff has not alleged that the City somehow profited from its negligent supervision of APD's employment decisions, nor could she seriously allege that the operation of a police department is not an activity undertaken primarily for public benefit. *See id.* (interpreting O.C.G.A. § 36-33-1's reference to "governmental functions" to mean "[a]ctivities that are undertaken primarily for public benefit rather than for revenue production."). Accordingly, the Plaintiff fails to state a claim for respondeat superior liability in Count VI, and the Court will dismiss this count.

### C. RICO Liability under Georgia and Federal Law (Counts VII & VIII)

The City asserts that the Plaintiff has failed to state a RICO claim under state law because she has not alleged the requisite level of detail—namely, there are no allegations as to a pattern of racketeering activity or that it acquired or maintained control of an enterprise, property, or money. (City's Def.'s Mot. to Dismiss, at 15). Likewise, the City argues, the Plaintiff has failed to allege a prima facie claim for a federal RICO violation because she makes only a conclusory allegation that APD "engaged in a pattern of behavior sufficient to constitute racketeering activity", which lacks any detail as to the City's alleged purpose for engaging in such activity. (*Id.* at 15-16).

The Plaintiff responds that the Complaint alleges multiple predicate

acts by Anderson and other APD officers, and APD as an organizational structure, through which the officers' acts were facilitated and covered up, which satisfies the enterprise requirement. (Pl.'s Resp. in Opp'n to Mot. to Dismiss, at 13-14). She also contends that she has sufficiently established continuity of the enterprise with the eight incidents she alleged but that discovery will reveal additional incidents of similar misconduct. (*Id.* at 14).

Under Georgia law, it is "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a). "Racketeering activity," also known as a predicate act, is the commission, attempt to commit, or solicitation of a crime enumerated in O.C.G.A. § 16-14-3(5)(A). A "pattern of racketeering activity" requires at least two, interrelated predicate acts that were done "in furtherance of one or more incidents, schemes, or transactions." O.C.G.A. § 16-14-3(4)(A). Similarly, federal law makes it "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). To satisfy the interstate commerce requirement, a plaintiff "only need allege a minimal nexus of the enterprise to

20

interstate or foreign commerce," but the enterprise itself, rather than an individual defendant, must engage in or affect interstate commerce. *Shared Network Techs., Inc. v. Taylor*, 669 F. Supp. 422, 426 (N.D.Ga. 1987).

With regards to the Plaintiff's state law RICO claim, there are no allegations in the Complaint that the City endeavored to acquire or maintain an interest in any real or personal property, so only the enterprise prong is at issue. *See* O.C.G.A. § 16-14-4(a). In her Complaint, the Plaintiff alleges that the City, through Anderson, high-ranking officers, and the APD Office of Professional Standards and Internal Affairs Unit, participated in the crimes of the APD "enterprise" by "covering up crimes, failing to properly hire, train, and supervise officers; and improperly and insufficiently disciplining undisputed misconduct." (Compl. ¶ 166). She additionally alleges that APD supervisors conspired to violate the racketeering statute by "their reckless implementation of their discipline scheme wherein one or more supervising officers learned of, investigated, and ignored multiple, repeated crimes and civil rights violations." (*Id.* ¶ 167). The Plaintiff alleges that the City's acts of covering up and concealing officer misconduct and, more specifically, the actions of Nicole Glover in Z.A.'s case, constitute predicate acts. (*Id.* ¶ 171). She also alleges more generally that the APD has a "well-documented history of engaging in racketeering activity as defined in O.C.G.A. § 16-14-3," going on to list crimes such as assault, battery, and kidnapping. (*Id.* ¶ 170).

These allegations fail to state a RICO claim against the City under O.C.G.A. § 16-14-4(a) because, regardless of the Plaintiff's contentions about whether or not APD is an "enterprise," she has not properly alleged a pattern of racketeering activity. The Plaintiff does not allege that the City somehow committed any crimes through its alleged poor disciplinary practices and coverups, nor does this conduct constitute a crime enumerated in O.C.G.A. § 16-14-3(5)(A). To be sure, kidnapping is a predicate act, and the Plaintiff could potentially state a RICO claim against Anderson himself with a kidnapping predicate act. *See* O.C.G.A. § 16-14-3(5)(A)(vi). But here, in the Plaintiff's direct RICO claim against the City, there are no allegations of valid predicate acts by APD through its high-ranking officers and supervisors. Further, even if these alleged coverups could be considered qualifying predicate acts, the Plaintiff's general allegation that APD has made "diligent and desperate attempts to conceal" officer misconduct in several cases lacks sufficient demonstration of interrelatedness and similar intent. *See* O.C.G.A. § 16-14-3(4)(A).

Similarly, the Plaintiff's general allegation that APD officers have long engaged in predicate criminal acts like assault and kidnapping is not sufficient to state a RICO claim under Georgia law. For one, assuming as the Plaintiff alleges that APD is an enterprise, the Plaintiff has not alleged that these purported predicate criminal acts by its officers were committed with any

intent to benefit APD somehow, let alone to give it any special control or interest. O.C.G.A. § 16-14-4(a). In fact, the Plaintiff has not alleged any purpose or scheme for the alleged APD enterprise. In order to constitute a pattern of racketeering activity, these alleged predicate acts must have been committed "in furtherance of one or more incidents, schemes, or transactions." O.C.G.A. § 16-14-3(4)(A). For all of these reasons, the Plaintiff's state law RICO claim against the City fails, so Count VII will be dismissed against it.

The Plaintiff's federal RICO claim suffers the same fate. The Plaintiff makes no allegations with regard to how APD's alleged racketeering activity— to wit, failing to investigate and covering up officer misconduct—affected interstate or foreign commerce. *See* 18 U.S.C. § 1962(b); *Shared Network Techs., Inc.*, 669 F. Supp. at 426. And it appears all of the alleged predicate acts for this claim occurred within the State of Georgia. Thus, the Plaintiff's federal RICO claim fails, and Count VIII will also be dismissed against the City.

## IV. Conclusion

For the foregoing reasons, the Defendant City of Atlanta's Motion to Dismiss [Doc. 20] is GRANTED. This action remains pending against Defendant Anderson at this time.

SO ORDERED, this ___12th___ day of January, 2026.

THOMAS W. THRASH, JR.
United States District Judge

24